UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| TERRY A. RIGGLEMAN | *Plaintiff,* | CASE NO. 7:22-cv-00018 |
| v. | | MEMORANDUM OPINION |
| HAROLD CLARKE, ET AL., | *Defendants.* | JUDGE NORMAN K. MOON |

This civil rights action pursuant to 42 U.S.C. § 1983 was filed by Terry A. Riggleman, a Virginia inmate proceeding *pro se*. Riggleman named three defendants: Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC"), Dr. Mark Amonette, VDOC's Chief Medical Director, and Dr. Kyle Smith, who Riggleman describes as his "primary care physician" at Augusta Correctional Center. Riggleman's complaint asserts that Defendants withheld treatment for his Hepatitis C in violation of his Eighth Amendment rights. The complaint is dated January 3, 2022, and the Court deems it filed as of that date.

Pending before the Court are two motions to dismiss—the first filed jointly by Clarke and Dr. Amonette, and the second filed by Dr. Smith. Dkts. 17, 31. Both motions are premised on the same argument: that Riggleman's claims must be dismissed because his complaint constitutes improper claim splitting. In particular, Defendants argue that Riggleman raised the same claims in a prior case in this court, which remains pending, *Riggleman v. Clarke*, No. 5:17-cv-00063 ("*Riggleman I*").[1] For the reasons set forth herein, the Court will grant the motion filed by Clarke and Dr. Amonette, and will deny Dr. Smith's motion.

---

[1] When ruling on a motion to dismiss on the grounds of res judicata or the claim-splitting doctrine, a court may take judicial notice of facts from a prior judicial proceeding where the defense raises no disputed issue of fact. *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (citing *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)).

I.   BACKGROUND

**A.  The Prior Litigation—*Riggleman I***

*Riggleman I* was filed as a putative class action on June 26, 2017, by and through

counsel. That case remains pending and Riggleman is still represented by an attorney in that

case. There, as here, Riggleman alleged that he was improperly denied treatment for his Hepatitis

C, in violation of his Eighth Amendment rights. He asserted that VDOC's treatment guidelines

for inmates with Hepatitis C—which treated only the inmates with the most severe cases of the

illness, as measured by specific tests—violated his Eighth Amendment rights, and he claimed

that Defendants were responsible for those policies and that they knew he was being denied

treatment, but were deliberately indifferent to that serious medical need. *See generally*

*Riggleman I*, Compl., Dkt. 1.[2]

Both Clarke and Dr. Amonette were named as defendants in the earlier case and they

were named in both their individual and official capacities. By contrast, Dr. Smith is named only

in this case and was not named in the prior complaint. *Compare id.* with Dkt. 1, Compl.

As noted, *Riggleman I* remains pending, although it has been stayed since June 2022.

Prior to the stay, the case had progressed through various states of litigation and been close to

trial. In addition to briefing and a ruling on a motion to dismiss, *see* Mem. Op. & Order Denying

Mot. to Dismiss, Dkts. 56, 57, the parties also fully briefed and the Court ruled on both a motion

for class certification and a motion for summary judgment. The Court denied the motion for class

certification. Mem. Op. & Order Denying Mot. to Certify Class, Dkts. 145, 146. As for summary

judgment, the court denied the motion as to Plaintiff's claims seeking injunctive and declaratory

relief, finding that there was a genuine disputes of material fact on several pertinent issues. Mem.

---

[2] Where it is obvious from the context that a cite is to *Riggleman I*, the Court cites herein to docket entries by number, without including "*Riggleman I*."

Op. & Order on Mot. Summ. J., Dkts. 141, 142. It granted the motion as to Plaintiff's request for monetary damages against Defendants in their individual capacities, concluding that Defendants were entitled to qualified immunity, but allowed his claims for declaratory and injunctive relief to proceed. *Id.* Other litigation events also preceded the stay—a scheduling order had issued, a trial date had been set, and the parties had filed some pretrial motions and motions in limine, at least some of which the Court ruled on, Dkt. 166. There was a short stay in the case, as well, pending a decision from the Fourth Circuit as to whether to allow Plaintiff's appeal from the denial of the motion to certify a class. *id.*, but that appeal was not permitted.

The parties were then ordered to file periodic joint status reports concerning Plaintiff's treatment, which he began in January 2020 with receipt of his first dose of a direct-acting antiviral drug, the treatment he had sought. Dkts. 170, 173, 175. While the litigation was ongoing, Riggleman completed his course of drug therapy in April 2020, and eventually was considered cured of Hepatitis C. *See, e.g.*, Dkt. 179.

Because Riggleman had received the injunctive relief he sought, and the Court had granted qualified immunity to Defendants as to any individual-capacity claims for damages, Riggleman sought to voluntarily dismiss the remaining claims in the case to allow him to appeal the Court's grant of qualified immunity. Dkt. 183. That motion was taken under advisement, and the Court subsequently advised that it was reconsidering its prior grant of qualified immunity, directing briefing on the topic. Dkts. 190, 196. Defendants filed an opposition to the proposed action, Plaintiff responded, and Defendants filed a reply. Dkts. 190, 199, 200.

After that issue was fully briefed, however, the Court stayed the action in June 2022, pending the Fourth Circuit's issuance of its decision in *Pfaller v. Amonette*, No. 21-1555, 21-1612 (4th Cir.), which was expected to address the issue of whether Dr. Amonette and another

defendant in that case were entitled to qualified immunity as to similar claims with similar timing. Dkts. 201, 204. Defendants informed the Court in December 2022 that *Pfaller* had been decided, and they urged the Court to grant their motion to dismiss on qualified immunity grounds and to not reconsider its earlier grant of qualified immunity. Status Report, Dkt. 207. Thus, although the Court previously ruled and granted qualified immunity, whether Defendants are entitled to qualified immunity remains an open issue in *Riggleman I.*

Significantly, at the time the case was stayed pending a decision in *Pfaller*, numerous deadlines in the scheduling order already had passed. As relevant here, the original scheduling order—entered January 12, 2018—stated that "[e]xcept for good cause shown," any motion to join other parties and any motion to amend pleadings had to be filed no later than 45 days from the date of this order. *Riggleman I*, Dkt. 49, ¶¶ 23–24. The parties jointly proposed amending that deadline to July 15, 2018, which was granted. *Id.*, Dkts. 54, 55. Riggleman never moved to amend his pleadings or to add Dr. Smith as a party.

**B.  The Case at Bar**

As noted, Plaintiff's complaint in this case also raises claims on account of his worsening condition based on the failure to treat his Hepatitis C. He alleges that he is "suffering from significant physical injury and irreparable harm as a direct result of the Defendants' delay in providing him medically necessary treatment for his chronic disease." Compl. 3. His complaint contains many of the same allegations that were in the *Riggleman I* complaint. Notably, he includes allegations concerning Defendants' alleged failure to treat him for years, including the years leading up to 2017, when *Riggleman I* was filed, as well as from 2018 through January 2020, after *Riggleman I* had been filed.

The complaint also contains allegations about events that occurred during the *Riggleman*

*I* proceedings, citing to statements made by Defendants (and others) in their depositions and at the hearing on the motion for preliminary injunction, which was in May 2018. *See* Compl. 20–24; *see also* Pl.'s Opp'n, Ex. B, Dkt. 34-1, at 14–24 (excerpts of transcript from May 21, 2018 hearing). It further alleges that Plaintiff's condition continued to deteriorate during the pendency of *Riggleman I* and before he started receiving treatment. He claims that the delay in treatment, especially during the period of 2018 through 2020, led to him developing cirrhosis of the liver, which puts him at "great risk for liver cancer and liver failure" and will require long-term monitoring. Compl. 26.

With regard to Dr. Smith, Riggleman emphasizes that it was not until January 9, 2020, when a VDOC Health Services Unit told him that it was up to Dr. Smith whether Riggleman received treatment or not, that he had any reason to believe that Dr. Smith was the reason for any delays in his treatment. Before then, he had been repeatedly told that the decision about whether he would receive treatment was up to "Richmond" or "VDOC," thereby implicating Dr. Amonette or Clarke, but not Dr. Smith. Opp'n to Dr. Smith's Mot. to Dismiss 4, Dkt. 43. Thus, Riggleman asserts that he had no reason for asserting a claim against Dr. Smith in the earlier case.

There are some differences between the two complaints. In addition to the case at bar including Dr. Smith as a defendant, the complaint names Defendants only in their individual capacities. Compl. 27. Riggleman adds a claim for punitive damages, although he also seeks—as he did in *Riggleman I*—a claim for declaratory relief and compensatory damages.

## II.  DISCUSSION

### A.  Standard for Motion to Dismiss Under Rule 12(b)(6)

As courts have recognized, a motion to dismiss asserting a violation of the claim-splitting

doctrine is properly raised under Rule 12(b)(6). *Brightview Grp., LP v. Glynn*, No. CV SAG-21-3027, 2022 WL 743937, at *6 (D. Md. Mar. 11, 2022) (collecting authority). And, as referenced *supra* note 1, the Court may take judicial notice of facts from the prior judicial proceeding without having to convert the motion into one for summary judgment.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).

**B. The Rule Against Claim Splitting**

Both motions to dismiss seek dismissal on the grounds that the claims in this case either were brought—or could have been brought—in *Riggleman I*, and argue that the prohibition against claim splitting bars Plaintiff from reasserting them here. "The principles behind the claim-splitting doctrine, like those behind res judicata, are to foster judicial economy, to protect parties from vexatious and expensive litigation, and to prevent piecemeal litigation." *Superior Performers, Inc. v. Family First Life, LLC*, No. 1:14-cv-382, 2015 WL 471389, at *4 (M.D.N.C. Feb. 4, 2015). The doctrine also aims to avoid a situation where "identical issues" are "determined in separate actions," creating "both confusion and inefficiency." *McNeely v. Soyoola*, No. 2:12-cv-8727, 2013 WL 3457731, at *4 (S.D. W. Va. July 9, 2013).

"In a claim splitting case, . . . the second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as

the first claim." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626

(D. Md. 2006), *aff'd in relevant part*, 273 F. App'x 256, 264–66 (4th Cir. 2008) (quoting

*Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir. 2002)). Dismissal on

claim-splitting grounds does not require a final judgment in the parallel action, as the doctrine of

claim splitting bars two suits "on the same subject in the same court, against the same defendant

at the same time." *Sensormatic Sec. Corp.*, 273 F. App'x at 265 (citation omitted).

### 1. Defendants Clarke and Dr. Amonette

The motion by Defendants Clarke and Dr. Amonette is easily resolved. As noted, to bar a

second suit on claim-splitting grounds, the second claim must: (1) involve the "same parties or

their privies" as the first; and (2) arise out of the same transaction or series of transactions as the

first claim. The first of these requirements is satisfied. Both defendants were named in

*Riggleman I* and are named in this complaint. Moreover, the fact that they are *only* named in

their individual capacity here does not change that result, because they were named in *both* their

official and individual capacities in *Riggleman I*. Because both cases assert claims against them

in their individual capacities, this situation does not implicate the rule that a person sued in his

official capacity is not in privity with himself, when sued in his individual capacity. *Andrews v.

Daw*, 201 F.3d 521, 523 (4th Cir. 2000) ("[A] government employee in his official capacity is

not in privity with himself in his individual capacity for purposes of res judicata.").

As to the second requirement, the Court concludes that the two suits involve the same

claims, as is obvious from the Court's description of them. They both seek damages for the delay

in treating Plaintiff's Hepatitis C, and they both assert that Defendants were deliberately

indifferent toward his serious medical need, in violation of his Eighth Amendment rights.

In his response to the motions to dismiss, Riggleman asserts that the facts in this suit are

"separable" from *Riggleman I*, "because [this case] involves different injuries and arose out of a different set of core events that occurred subsequent to the June 26, 2017 filing." Pl.'s Opp'n to Defs.' Mot. Dismiss 2–3, Dkt. 34. He asserts that this complaint focuses on the denial of treatment from 2018 through January 2020. Nowhere does he explain, however, *how* it involves different injuries or is not part of the same core events. The fact that Riggleman continued to be denied treatment for his Hepatitis C after he filed his first lawsuit in 2017 does not make the later time period a separate claim. Instead, the continued delays were still part of a continuous series of delays.

Further, to the extent that he is arguing they are not the same claims because he is suing for a different time-period, the damages from the later years are still part of *Riggleman I*. Although he filed suit in January 2017, then, he arguably could seek damages in *Riggleman I* for any period of time from the start of his delayed treatment until he began receiving treatment in January 2020, and for any permanent damage he sustained as a result of *any* delay, including delays in 2018 through the start of his treatment in 2020. *Cf. DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018) (holding that a prisoner could "allege a continuing violation under Section 1983 by identifying a series of acts or omissions that demonstrate deliberate indifference to a serious, ongoing medical need" and the statute of limitations would begin to run on the date "adequate treatment was provided").[3]

For support of his position that the claims in the two lawsuits are different, Riggleman relies on cases that hold that res judicata does not bar claims that did not exist at the time of the prior litigation, such as *Meekins v. United Trans. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991).

---

[3] His request for punitive damages, which were not sought in *Riggleman I*, could have been sought through seeking amendment of the complaint in the earlier case. As discussed elsewhere in this opinion, a plaintiff may not use a separate lawsuit to assert claims or requests for relief that should have been sought—or perhaps still could be sought—in an earlier case.

And he cites *Crowe v. Leeke* for the proposition that res judicata does not bar claims that are predicated on events that postdate the filing of the earlier complaint. 550 F.2d 184, 187 (4th Cir. 1977). These cases are inapposite.

First of all, Riggleman misunderstands *Crowe*, which held that claims that arise after *judgment* in the earlier case are not barred by res judicata. *Crowe* did not involve the situation where claims that arose after an earlier complaint was filed, but before judgment in that case was entered. Indeed, in *Crowe*, the court held only that "res judicata does not prevent [plaintiffs] from challenging acts occurring after the [earlier] *judgment* was entered." *Id.* at 187 (emphasis added).

*Meekins* is also distinguishable. Like *Crowe*, the claim in the second suit in *Meekins* did not exist at all before the conclusion of the first suit, because the actions giving rise to that claim had not yet occurred at the time of judgment in the earlier suit. There, the alleged wrongdoing (a refusal to pay) was similar to earlier refusals to pay, but occurred *after* the district court had ruled in the first suit that the failure to pay was a breach and entitled the party to damages. 946 F.2d at 1058. After that, the opposing party then engaged in another, discrete refusal to pay. The *Meekins* court specifically held that the claim did not arise out of the same transaction or series of transactions as the claim in the prior case, but "out of a different transaction." *Id.*

Here, Riggleman's Eighth Amendment claim premised on the delayed treatment for his Hepatitis C existed at the time he filed his first suit, and his damages, if any, have not yet been determined. The situation is distinct from res judicata in that respect. In particular, with a res judicata defense, the first case is no longer pending, so additional claims arising afterward, or additional damages incurred after judgment is entered, cannot be remedied by the earlier suit, which has already concluded. The same is not true of a claim-splitting defense, because—by definition—the first case remains pending. Thus, as Riggleman could here, a plaintiff could seek

and potentially obtain damages incurred through judgment in that first case, even if they were based on harms that continued after suit was filed.

Also noteworthy is that a plaintiff in a claim-splitting situation—unlike res judicata—could seek to amend to assert a claim that arose after the case was filed, but while it was still pending. Indeed, the ability to amend—especially coupled with a failure to do so or the denial of such a motion—is one of the reasons that courts often dismiss a second case based on improper claim splitting. *See, e.g.*, *Sensormatic Sec. Corp.*, 273 F. App'x 256 (dismissing second case where plaintiff sought to add claims that the court in the first case had denied leave to add). To the extent that Riggleman believes there are distinct claims he is raising in this case, he has not presented any reason why he should not be required to amend in the original case, rather than require Defendants Dr. Amonette and Clarke to defend at the same time against two separate lawsuits arising from the same set of facts.

In short, the Court is convinced that the claims in this suit are the same claims that Riggleman brought in 2017 and relate to the same core facts—the denial and delay of treatment for his Hepatitis C. The Court thus concludes that his claims against Dr. Amonette and Clarke constitute improper claim splitting. Those claims and those defendants will be dismissed.[4]

## 2. Defendant Dr. Smith

Dr. Smith stands on different footing. Even assuming that the claims are the same between the two cases, Dr. Smith was not a party to the first case. To be sure, it is not necessary that Dr. Smith actually have been a party to *Riggleman I* for him to assert a claim-splitting

---

[4] "[A] court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it," or, if possible, "consolidate the two actions." *Couch v. Jabe*, No. 7:09-cv-00434, 2010 WL 1416730, at *1 (W.D. Va. Apr. 8, 2010) (citation omitted). Given the fact that the claims here are identical—or nearly so—to those that remain in *Riggleman I*, the Court concludes that dismissal is the appropriate remedy. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000) (noting that "dismissal of the second suit" is a "common disposition" upon a finding of claim splitting "because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time").

defense against Plaintiff. As another court has explained,

> [T]he fact that some of the plaintiffs and defendants are different in the instant case does not cut against dismissal for claim splitting. The Defendants in this case who were not involved in *Kendall* should have been added in that case. Failure to add them does not justify bringing a duplicative suit.

*Rousseau v. Howard Cnty., Md.*, No. CIV. JFM-09-CV-1079, 2009 WL 4018551, at *3 (D. Md. Nov. 19, 2009), *aff'd on other grounds,* 425 F. App'x 193 (4th Cir. 2011).

The decision in *Brightview Group, LP v. Glynn*, Civil No. SAG-21-3027, 2022 WL 743937 (D. Md. 2022), discussed this concept in some detail and cited to authority from the Fourth Circuit and other Circuit Courts of Appeals to explain why the defendant there could assert a claim-splitting defense against the plaintiff, even though the defendant was not a party to the first suit. That court summarized:

> Brightview—the party against whom preclusion is sought—was a party to *Brightview I*, where it had a full and fair opportunity to select [the defendants] against whom it chose to proceed. The issue is not therefore, as Brightview insists, whether it is entitled to its own day in court, . . . but whether it gets "a second bite at the apple."

*Brightview Grp.*, 2022 WL 743937, at *9.

Rather than requiring that the parties to the two suits match perfectly, then, courts instead have found improper claim splitting where a defendant to the subsequent suit was "in privity with" the defendants in the first. *Brightview Grp.*, 2022 WL 743937, at *9 (noting that courts apply "settled privity law to determine whether a plaintiff to an initial suit, in filing a subsequent action, has run afoul of the claim splitting doctrine") (citing *Nathan v. Takeda Pharms. Am., Inc.*, 546 F. App'x 176 (4th Cir. 2013)).

Dr. Smith's motion does not even mention the word privity, nor does he discuss the issue. Instead, Dr. Smith focuses on the fact that Riggleman could have move to amend to add him as a

party in *Riggleman I*, but instead chose to file a new lawsuit against him, three and one-half years after the deadline for amending had passed. The court agrees that Riggleman probably could have moved to amend to add Dr. Smith, and likely even before the deadline for amending had passed.[5] He was represented by counsel in that case at all times, but failed to seek to add Dr. Smith there. Dr. Smith also is correct that proceeding by filing a new complaint is not permitted as a way to circumvent a motion for leave to amend a complaint. *Sensormatic Sec. Corp.*, 273 F. App'x at 265; *Brightview Grp.*, 2022 WL 743937, at *6.

Critically, though, regardless of whether Riggleman could—or should—have sought leave to add Dr. Smith as a defendant in *Riggleman I*, the failure to amend only bars his claim against Dr. Smith in this case if Dr. Smith was in privity with Dr. Amonette and Clarke. As discussed next, the Court concludes that he was not.

On this point, neither *Sensormatic*, relied on by Dr. Smith, nor *Brightview Group* compels a different conclusion. In *Sensormatic*, the plaintiff sought only to add new claims against the same party, so there was no issue of privity. *See generally* 273 F. Appx. 256. And in *Brightview Group*, before discussing whether plaintiff was attempting an end-run around a failure to amend, the court addressed that the party plaintiff sought to add in the second suit was in privity with the defendants in the first suit. 2022 WL 743937, at *9 (stating that the allegations in [the] Complaint . . . dispel any doubt" that the defendant to be added is privies with the

---

[5] Riggleman concedes that he had concerns with Dr. Smith's medical care as early as June 2018, which was *before* the July 15, 2018 deadline for adding parties or amending the pleadings. But Riggleman insists that he did not know the full extent of Dr. Smith's conduct—or that Dr. Smith allegedly was responsible for the decisions regarding whether he received treatment or not—until after the deadline for amending in *Riggleman I* had passed. As the *Brightview Group* court explained, though, the deadline for amending was not the last point at which plaintiff's claims (against the new defendant) could have been included. *Brightview Grp.*, 2022 WL 743937, at *11. Instead, plaintiff "had ample opportunity—with any reasonable exercise of diligence—to seek leave to assert its claims against [the defendant] in [the first suit]. Instead, [plaintiff] . . . declined to do so for more than a year, during which times the parties fully briefed dispositive motions" and other actions occurred. *Id.* Because the court concludes that Dr. Smith was not in privity with Dr. Amonette or Clarke for purposes of *Riggleman I*, it need not resolve the dispute of whether plaintiff could or should have sought leave to amend to add Dr. Smith.

defendants in the first lawsuit).

The Court applies Virginia's privity law to determine whether Dr. Smith was in privity with the defendants in *Riggleman I. Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 218 & n.1 (4th Cir. 2006) (holding that, in determining preclusive effect of judgment in former case, a court should apply the res judicata law of the state where the federal district court sat in the first action). "[T]he Supreme Court of Virginia has emphasized[, though,] that the federal and state tests governing privity issues are 'virtually identical,' specifically invoking [the Fourth Circuit's decision in *Andrews v. Daw*, 201 F.3d 521 (4th Cir. 2000).]" *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) (citing *State Water Control Bd. v. Dr. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 n.4 (Va. 2001)).

> Under Virginia law, "[t]here is no single fixed definition of privity for purposes of res judicata. Whether privity exists is determined on a case by case examination of the relationship and interests of the parties." [*Raley v. Haider*, 747 S.E.2d 812, 816 (Va. 2013).] "The touchstone of privity for purposes of *res judicata* is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." *Id.*

*Harris v. Wells Fargo Bank N.A. for WaMu Mortg. Pass-Through Certificates Series 2006-PR-1 Tr.*, No. 3:16-CV-174-JAG, 2017 WL 838687, at *4 (E.D. Va. Mar. 3, 2017). Put differently, "[t]here must be some kind of relationship existing between the two parties that would permit one party to assert the other's legal rights during the first suit." *Columbia Gas Transmission, LLC v. David N. Martin Revocable Tr.*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011) (citing *Rawlings v. Lopez*, 591 S.E.2d 691, 692 (Va. 2004)). "Virginia courts typically find privity when the parties share a contractual relationship, owe some kind of legal duty to each other, or have another legal relationship such as co-ownership." *Id.* In general, courts have recognized privity between entities and their employees, entities and their subsidiaries, and between co-

conspirators. *Brightview Grp.*, 2022 WL 743937, at *9 (citations omitted). Ultimately, the analysis "focuses not on the parties' formal titles or affiliations, but on whether the interests of the parties are precisely aligned with respect to the litigation." *Id.*; *see also Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997) (describing privity as where the new party is "so identified in interest with a party [from the prior] litigation that he represents precisely the same legal right in respect to the subject matter involved").

Neither Dr. Smith nor Plaintiff has discussed or briefed the issue of whether Dr. Smith was in privity with Defendants in *Riggleman I*, and the Court's own research has not disclosed a simple answer. This is understandable, as the analysis depends on a case-by-case evaluation. *Raley*, 747 S.E.2d at 816. Several cases suggest that prison employees generally are in privity with other prison employees where the claims arise out of the same incident or incidents. *See, e.g.*, *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (affirming dismissal on res judicata grounds and concluding that the defendants in the second suit were in privity with defendants in the first because all are employees of the same entity and their interests were "adequately represented" in the first suit); *see also Walker v. Wetzel*, No. 3:20-CV-1608, 2022 WL 433161, at *5 (M.D. Pa. Feb. 11, 2022), *aff'd,* No. 22-1357, 2022 WL 4103632 (3d Cir. Sept. 8, 2022) (holding that other prison staff and officials were in privity with other earlier defendants where it was alleged that there was either a supervisory or subordinate relationship between them); *Grindling v. Martone*, CIV. No. 12-00361 LEK/BMK, 2012 WL 3776491, at *6 (D. Hawaii Aug. 29, 2012) (defendants to new lawsuit, including prison officials, were in privity with the other prison officials in prior lawsuit because their interests were "represented adequately by a party in the original suit").

The Court located one case where the same principle was applied to medical personnel,

although it is unclear from the opinion whether those medical personnel worked directly for the prison or for a contractor. *West v. Coupe*, No. CV 14-1252-SLR, 2014 WL 6784319, at *3 (D. Del. Nov. 30, 2014). In *West*, the court dismissed the complaint on res judicata grounds where the claims were based upon the same transactions as a prior complaint, including claims based on the medical treatment provided the prisoner-plaintiff. In doing so, the court reasoned that "the addition of new defendants to those plaintiff named before does not change [the] conclusion because they are all prison officials or medical personnel in privity with one another." *Id.* at *3.

In *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 593 & n.7 (W.D. Pa. 2008), by contrast, the court noted that it was unclear, on a motion to dismiss, whether the medical defendants were in privity with prison officials who were named in prior lawsuit.

The Court does not see this case as an easy case, but ultimately, based on the limited record before it, the Court concludes that Dr. Smith is not in privity with Dr. Amonette and Clarke in *Riggleman I*.[6] First of all, in ruling on a motion to dismiss, the court must view the facts in the complaint in the light most favorable to Riggleman. *Massey*, 759 F.3d at, 347. The complaint does not allege that Dr. Smith is a VDOC employee, nor does it allege any type of relationship between him and the *Riggleman I* Defendants, such as a supervisory, subordinate, or co-worker relationship.[7]

In considering the claims against them, all three defendants are said to have played a role in the denial of Riggleman's treatment, and all three had the same general interest in defending against Riggleman's claims, at least on the basis of their merits—*i.e.*, that they did not violate his

---

[6] It is possible that the Court could reach a different result upon a more developed record or with additional factual information concerning any relationship between the defendants in *Riggleman I* and Dr. Smith.

[7] Indeed, it appears that Dr. Smith is not a VDOC employee, as he has filed affidavits in other recent cases indicating that he "has worked as in independent contractor providing medical care and treatment to [Augusta Correctional Center] inmates since July 2018." *Coward v. Clarke*, No. 7:20cv00702, 2022 WL 991702, at *2 (W.D. Va. Mar. 31, 2022).

Eighth Amendment rights—and likely also with regard to qualified immunity.[8] So, their interests are certainly aligned in a general sense. But the claims against each are also based on each Defendant's own conduct, what he knew, and when he knew it. In that sense, the claims against them are distinct and certainly not so closely aligned that Clarke and Dr. Amonette acted as substitutes for him in *Riggleman I*.

Additionally, the Court finds it noteworthy that, in *Pfaller*, the Fourth Circuit held that Dr. Amonette was entitled to qualified immunity, but the plaintiff's treating physician was not. *See* 55 F.4th 436, 454–56 (4th Cir. 2022). In part, this stemmed from the fact that the claim against Dr. Amonette was based primarily on Hepatitis C treatment guidelines and policies he had created, and the Fourth Circuit concluded that it was not clearly established that those policies violated the plaintiff's constitutional rights. *Id.* at 455–56. By contrast, the treating physician was liable, if at all, not based on the policies themselves, but for his own decisions and treatment of the plaintiff. *Id.* at 456. There, the physician was alleged to have ignored the policies and not referred the plaintiff for additional treatment, even though he met the standards for referral under the policies. *Id.* at 453.

Although *Pfaller* nowhere involved a discussion of privity, the fact that the Fourth Circuit reached different conclusions as to each of these Defendants on the issue of qualified immunity

---

[8] Although not raised by the parties, the Court independently has considered whether Dr. Smith would be able to assert the defense of qualified immunity, as it is perhaps unsettled whether a private physician working at a prison can even assert a qualified immunity defense. *See Hoskins v. Wexford Health Sources, Inc.*, No. CV DKC-17-3823, 2019 WL 1167815, at *10 (D. Md. Mar. 13, 2019) (noting that "[c]ircuits are divided on whether privately employed doctors who provide services at prisons or public hospitals pursuant to state contracts are entitled to assert qualified immunity" and holding that physicians could assert the defense). *See also Walker v. Wellpath*, No. No. CV 5:21-3624-HMH-KDW, 2022 WL 18635149, at *11 & n.8 (D.S.C. Dec. 21, 2022) (raising the issue and declining to resolve it, instead deciding the case on other grounds). *Lovelace v. Clarke*, No. 2:19-CV-75, 2022 WL 4370442, at *16 & n.21 (E.D. Va. Sept. 21, 2022) (same).

After those cases, the Fourth Circuit issued *Pfaller*, which did not squarely address the issue of whether a contract physician could assert the defense. 55 F.4th 436 (4th Cir. 2022). But it analyzed qualified immunity at length for such a physician. *Id.* at 454 (affirming district court's denial of qualified immunity to physician). Thus, the *Pfaller* Court implicitly answered the question, as there would have been no reason to discuss qualified immunity in such detail if it were wholly inapplicable to a contract physician.

suggests that the interests of Dr. Amonette are not sufficiently aligned with Dr. Smith's to find that they are privies.

Because the Court finds that Dr. Smith is not in privity with the *Riggleman I* Defendants, the rule against claim splitting does not prohibit this lawsuit, to the extent it asserts claims against him. Accordingly, the court will deny his motion to dismiss, which seeks dismissal only on that ground.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss of Defendants Dr. Amonette and Clarke, Dkt. 17, will be granted. Defendant Dr. Smith's motion, Dkt. 31, will be denied without prejudice. An appropriate order will be entered.

**ENTER**: This ___14th___ day of March, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE